**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARA Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>City of Glendale,<br><br>    Defendant. | No. CV-17-02512-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

In 2015, the City of Glendale (the "City") entered into a six-figure contract with a staffing company operated by Michelle and Jeffery Griffin to obtain temporary workers for various municipal projects. What was the name of the staffing company? That's the key disputed issue.

The Griffins are actually affiliated with two different staffing companies with very similar names. The first, JG Staffing, Inc., is a Texas corporation that was formed in 2005, and the second, JG Staffing Arizona, LLC, is an Arizona limited liability company that was formed in 2012. Here, although the original bid for the contract was submitted by Mr. Griffin, who identified himself as the CEO of "JG Staffing, Inc.", and although the City responded by sending a notice of intent to award the contract to "JG Staffing. Inc.", Ms. Griffin later informed the City that she "would prefer everything be under JG AZ since this is an Arizona account" and Mr. Griffin submitted a "Best and Final Offer" on behalf of "JG Staffing AZ." Thus, the final contract identified the City's counterparty as "JG

Staffing Inc., a Arizona Corporation" and the contract was signed by Ms. Griffin as the vice president of "JG Staffing Inc., an Arizona corporation." There is, unfortunately, no such company as "JG Staffing Inc., an Arizona corporation"—this appears to be a jumble of the two real companies' names. About a year later, Ms. Griffin sent the City a letter stating that "JG Staffing Inc. . . . was incorrectly used by our sales manager to bid on the contract" and that "the correct entity" was "JG Staffing AZ."

How does Plaintiff ARA Incorporated ("ARA") fit into all of this? In 2011, ARA entered into a factoring agreement with JG Staffing, Inc. (the Texas corporation). In July 2016, following a default under the factoring agreement, ARA sent a letter to the City. This letter explained that ARA, as a secured creditor of JG Staffing, Inc., was entitled to receive all future payments owed to JG Staffing, Inc. under the staffing contract. The City, however, failed to remit the future payments to ARA—it kept sending them to a bank account associated with JG Staffing Arizona, LLC. This lawsuit ensued.

Now pending before the Court are cross-motions for summary judgment filed by ARA (Docs. 54 & 56) and the City (Doc. 67).[1] In addition to quarreling over whether ARA actually had a security interest in the staffing contract, whether ARA properly notified the City of that interest, and whether this lawsuit was filed within the statute of limitations, the parties ask the Court to determine, as a matter of law, the identity of the City's counterparty under the staffing contract—ARA argues it had to be JG Staffing, Inc. and the City argues it had to be JG Staffing Arizona, LLC.

As explained below, the Court will deny both parties' motions in significant part.[2] This case involves an array of conflicting evidence concerning the identity of the City's counterparty. Although ARA and the City have each identified certain pieces of evidence that tend to support their position, it should be a factfinder—not the Court at summary judgment—that decides how to weigh those pieces of evidence and resolve any conflicts.

---

[1] The Court held oral argument on these motions on January 24, 2019.

[2] The only exception is that the Court will grant the City's motion for summary judgment on Count IV, which asserts a claim for "account stated."

**BACKGROUND**

I. <u>The JG Entities</u>

JG Staffing, Inc. is a Texas corporation that was incorporated in 2005. (Doc. 68-3 [Griffin Decl.] at 2 ¶ 3.) It provides temporary staffing services. (*Id*.) JG Staffing Arizona, LLC is a limited liability company that was organized and formed in Arizona in 2012. (*Id.* at 2-3 ¶ 4.) It also provides temporary staffing services. (*Id*.) Ms. Griffin was involved with the management and operations of JG Staffing, Inc. and was a member of JG Staffing Arizona, LLC. (*Id.* at 2 ¶ 2.) Her husband, Mr. Griffin, is the President of JG Staffing, Inc. (*Id.*)

II. <u>The Factoring Agreement</u>

On or about May 4, 2011, ARA and JG Staffing, Inc. entered into the Factoring Agreement, under which ARA received "[a]s security for the Obligations [under the Factoring Agreement]," "a security interest in [JG Staffing, Inc.'s] business assets, including, without limitation, all accounts, contract rights and other rights to payment, and all proceeds of the foregoing." (Doc. 58-5 at 31, 33 § 8, 37.)

In March 2015, ARA learned that JG Staffing, Inc. breached the Factoring Agreement. The parties thereafter sued each other in Minnesota state court. The jury found JG Staffing, Inc. liable on multiple claims and found ARA was not liable on any of JG Staffing, Inc.'s claims. (Doc. 57-2.)

III. <u>The Staffing Contract</u>

In November 2014, the City issued a request for proposal with the solicitation number "RFP 15-17" and the description "Temporary Workers for Recycling Facility, Landfill and Public Works Department." (Doc. 58-6 at 46-70.)

On December 1, 2014, "JG Staffing Inc." submitted a proposal for RFP 15-17. (Doc. 58-6 at 74-114.) This proposal was signed by "Jeffery Griffin" as "CEO" of "JG Staffing Inc." and included the email address "jgriffin@jgstaffinginc.com" and the federal taxpayer ID number 20-1936759. (*Id.* at 76.) Every page of this proposal also noted "JG Staffing Inc." in the footer. (*Id.*)

The "Best and Final Offer" (likely mistakenly dated April 7, 2014) submitted in connection with this proposal was signed by "Jeff Griffin" as "Sales Manager" of "JG Staffing AZ." (Doc. 58-6 at 196-203.)

On April 30, 2015, the City wrote a letter to "Mr. Jeffery Griffin," as "CEO" of "JG Staffing, Inc.," notifying him that the City was offering JG Staffing, Inc. a "Notice of Intent to Award" a contract under RFP 15-17, pending any bid protests. (*Id.* at 115-16.)

On June 29, 2015, Ms. Griffin sent the City an email requesting to change the Employer Identification Number for the submitting party. The email stated: "The reason I want to change the EIN is because our sales person used the 20-number and I would prefer everything be under JG AZ since this is an Arizona account." (Doc. 68-3 at 73.)

On or about August 25, 2015, there was a request for the City Council "to authorize the Acting City Manager to enter into an agreement with J.G. Staffing, Inc., to provide temporary staffing services for the Public Works Department in an amount not to exceed $875,153 annually." (Doc. 58-6 at 117.) The City's 30(b)(6) designee testified in her deposition that this authorization was provided and that "[t]he City Council approved the City Manager to enter into a contract with JG Staffing, Inc." (*Id.* at 29:2-12, 43:5-6).

On August 28, 2015, the City entered into a contract (the "staffing contract") with "JG Staffing Inc., a Arizona Corporation," which incorporated RFP 15-17. (*Id.* at 119.) Ms. Griffin signed the contract as "Vice President" of "JG Staffing Inc., an Arizona corporation." (*Id.* at 128.)

On September 16, 2015, Ms. Griffin submitted a form to the City identifying JG Staffing Arizona, LLC's EIN and bank account information, so that payments under the staffing contract could be deposited into that account. (Doc. 68-3 [Griffin Decl.] at 4-5 ¶ 15; 76.)

On or about July 1, 2016, the City stated that it wished to renew the staffing contract for a second year. (Doc. 58-4.) On July 12, 2016, Mr. Griffin executed the one-year contract extension on behalf of "J G Staffing, Inc." (*Id.*)

On July 16, 2016, ARA became aware of the staffing contract. (Doc. 58-5 [Reid

Dep.] at 43:22-45:2, 58:9-14.) On July 19, 2016, ARA sent the City a letter. (Doc. 58-6 at 204.) The letter indicated in the first line that it was regarding the "Agreement for Temporary Workers for Recycling Facility, Landfill & Public Works." (*Id.*) The next paragraph stated: "ARA has a pre-existing relationship with JG Staffing Inc. as a source of capital funding. Related to this relationship, JG Staffing Inc. has pledged a security interest in its business assets (including, without limitation, rights to payment on JG Staffing Inc. invoicing) to ARA." (*Id.*) The letter went on to state that "ARA has teamed with AGR Funding Inc., a specialist in the staffing industry, to manage payments related to JG Staffing Inc. Please make all payments for JG Staffing Inc. to [AGR Funding Inc.]. . . . The foregoing irrevocable payment instructions shall not be modified without ARA's prior written consent." (*Id.*)

On July 21, 2016, the City sent ARA an email acknowledging receipt of ARA's letter and notifying ARA that "[i]n order for [the City] to accept this update into [the City's] system," the City needed to "receive a completed COG TIN to support this change," which was available at the link provided in the email. (*Id.* at 205.) AGR filled out the initial form, but the City asked for the form to be corrected. (Doc. 68-1 at [Reid Dep.] 67:2-10.) In a July 26, 2016 email, the City again asked ARA, in filling out the COG TIN form, to "confirm that the tax liability of the JG Staffing invoices will be the responsibility of ARA." (*Id.* at 82.) ARA returned a COG TIN form dated July 26, 2016 with JG Staffing Inc.'s TIN listed, but without a signature of anyone representing JG Staffing, Inc. (*Id.* at 68:24-71:21, 80, 82.)

In a July 29, 2016 email exchange, Mr. Griffin told a City employee that the EIN the City should be using for the staffing contract is the number for JG Staffing Arizona, LLC, not JG Staffing, Inc. (Doc. 58-6 at 212.)

On August 1, 2016, Ms. Griffin sent the City a letter stating that "JG Staffing Inc. (20-1936759) was incorrectly used by our sales manager to bid on the contract" and that "[p]rior to the inception of the contract this was formally changed to the correct entity JG Staffing AZ (46-0807153)." (Doc. 58-2.) She further claimed that "[t]he correct TIN

number 46-0807153 has been used by finance etc., since the inception of the contract" and that "[i]t appears as if there may be a miscommunication and it was not changed in another area." (*Id.*)

On September 21, 2016, the City issued a second amendment to the staffing contract. (Doc. 58-6 at 214-17.) This amendment purported to formally change the contracting party from "JG Stafing [sic] Inc., TIN 20-1936759" to "JG Staffing AZ, TIN 46-0807153." (*Id.* at 217.)

The certificates of liability insurance that were submitted to the City in connection with the staffing contract identified JG Staffing Arizona, LLC as the insured party. (Doc. 68-3 at 78-79.) The invoices sent to the City were submitted on behalf of "JG Staffing of AZ." (*Id.* at 81.)

Ms. Griffin now claims in a declaration that "the response to the RFP that was submitted by JG [Staffing] Arizona[,] [LLC] mistakenly used the name of JG [Staffing,] Inc." and that "[a]t all times, JG [Staffing] Arizona[,] [LLC] was the company that was intended to enter into a contract with the City in connection with [RFP 15-17]." (*Id.* at 3 ¶¶ 7, 10.) She further claims that "the substantive information contained within the response to [RFP 15-17] (*i.e.*, pricing, compliance, management team, experience, references, etc.) pertained to JG [Staffing] Arizona[,] [LLC]." (*Id.*) However, the only example identified in Ms. Griffin's declaration is a piece of information that "pertains to both JG [Staffing,] Inc. and to JG [Staffing] Arizona[,] [LLC]." (*Id.*)

In her declaration, Ms. Griffin also asserts that "JG [Staffing,] Inc. did not perform any services under the Glendale Contract; no invoices were ever submitted in the name of JG [Staffing,] Inc.; and the City never made any payment to JG [Staffing,] Inc." (*Id.* at 5 ¶ 20 (emphasis omitted).) However, Ms. Griffin also concedes that "[t]he time sheets used by the temporary worker[s] were generic time sheets" that were "used interchangeably by both JG [Staffing,] Inc. and JG [Staffing] Arizona[,] [LLC]." (*Id.* at 5-6 ¶ 21.)

IV. The Complaint

ARA initiated this lawsuit in July 2017. (Doc. 1.) The complaint asserts four causes

of action against the City. Count I is a claim under Uniform Commercial Code § 9-607 (A.R.S. § 47-9607). Count II is a claim under Uniform Commercial Code § 9-406 (A.R.S. § 47-9406). Count III is a claim for breach of contract. Count IV is a claim for "account stated."

**LEGAL STANDARD**

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

I.      The City's Counterparty Under the Staffing Contract

In its motion for summary judgment on the breach of contract claim (Count III), ARA argues that "it is undisputed that . . . [t]he City entered into a contract for temporary staffing services with JG Staffing[,] [Inc.]." (Doc. 56 at 2.) Thus, ARA argues, because this contract was validly assigned to ARA, the City breached the contract by not remitting

contract-related payments to ARA.

In response, and in its own motion for summary judgment, the City contends that "based on the undisputed facts, the Court can determine as a matter of law that [ARA] had no right to receive any payment under the Glendale Contract because the payments owed by the City under the Glendale Contract were not owed to [ARA's] debtor, JG [Staffing,] Inc., but were owed to JG [Staffing] Arizona[,] [LLC]." (Doc. 65 at 5; Doc. 67 at 6.)

The Court disagrees with both parties' positions—there is a genuine dispute of fact as to the identity of the party that contracted with the City. Although ARA seems to have more evidence weighing in its favor at this point, it is not the Court's job to weigh the evidence at summary judgment. Accordingly, the Court denies both parties' motions for summary judgment on Count III.

The staffing contract recites that it is between the City, on the one hand, and "JG Staffing, Inc., a Arizona Corporation," on the other. (Doc. 58-6 at 119.) Ms. Griffin signed this contract as Vice President of "JG Staffing Inc., an Arizona corporation." (*Id.* at 128.) As both parties acknowledge, this is a fictional entity—there is no Arizona corporation called JG Staffing, Inc. Yet ARA contends that "JG Staffing, Inc., a Arizona Corporation" undisputedly refers to JG Staffing, Inc., a *Texas* corporation, while the City contends that "JG Staffing, Inc., a Arizona Corporation" undisputedly refers to JG Staffing *Arizona, LLC*, an Arizona *LLC*.

Ultimately, in interpreting a contract, a court must "attempt to 'ascertain and give effect to the intention of the parties at the time the contract was made if at all possible.'" *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1139 (Ariz. 1993) (quoting *Polk v. Koerner*, 533 P.2d 660, 662 (Ariz. 1975)); *see also Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 394 P.3d 1089, 1092 (Ariz. Ct. App. 2017) ("In interpreting a contract, our purpose is to determine and enforce the parties' intent.").

The City argues that because of the ambiguity in the party name in the contract, "the Court may look beyond the four corners of the document to determine who was intended to be the contracting party." (Doc. 65 at 6; Doc. 67 at 7.) As an initial matter, it is not

clear that a party name may constitute ambiguity in a contract. *Jordan v. John Soliday Fin. Grp.*, LLC, 2010 WL 1462345, *6 (N.D. Ohio 2010) ("Defendants have not cited any authority for the proposition that the name of a party can ever be considered an ambiguous term."). Nonetheless, "Arizona does not adhere to the view 'that ambiguity must exist before parol evidence is admissible.'" *Greyhound Lines Inc. v. Viad Corp.*, 260 F. Supp. 3d 1181, 1190 (D. Ariz. 2017) (quoting *Taylor*, 854 P.2d at 1140). Instead, "if [the Court] finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, [parol] evidence is admissible to determine the meaning intended by the parties." *Greyhound Lines*, 260 F. Supp. 3d at 1190 (quoting *Taylor*, 854 P.2d at 1140).

ARA asserts in its reply that the contract's "signature block cannot reasonably be construed in more than one sense" and that "'JG Staffing, Inc.' undoubtedly means the only 'JG Staffing, Inc.' owned by the Griffins." (Doc. 69 at 7, emphasis omitted.) This argument is unavailing. The contract refers twice to an Arizona corporation called JG Staffing, Inc. This entity does not exist. This party name could reasonably be construed to refer either to JG Staffing, Inc., the Texas corporation, or JG Staffing Arizona, LLC, the Arizona LLC. Thus, the Court will examine parol evidence in an attempt to ascertain the intent of the parties.

ARA's position is supported by documents from both before and after the contract was made. The original proposal was submitted on behalf of "JG Staffing Inc." using JG Staffing, Inc.'s TIN, and the City then sent a "Notice of Intent to Award" a contract letter to Mr. Griffin as "CEO" of "JG Staffing, Inc." Additionally, the parties' later efforts to amend the contract, to change the counterparty's name from JG Staffing, Inc. to JG Staffing Arizona, LLC, tend to suggest the original counterparty was indeed JG Staffing, Inc.

The City, however, argues the "most compelling evidence" of the parties' intent that the contract be with JG Staffing Arizona, LLC "is the parties' actual performance" under the staffing contract. (Doc. 65 at 8; Doc. 67 at 8.) It is true that "[t]he acts of parties under a contract, before disputes arise, are the best evidence of the meaning of doubtful contract terms." *Greyhound Lines*, 260 F. Supp. 3d at 1190 (quoting *Associated Students of the*

*Univ. of Ariz. v. Ariz. Bd. of Regents*, 584 P.2d 564, 569 (Ariz. Ct. App. 1978)). The acts of the parties here do indeed provide some support for the City's position, but they do not make it clear that the counterparty was JG Staffing Arizona, LLC rather than JG Staffing, Inc.

For example, the City was paying JG Staffing Arizona, LLC under the staffing contract. (Doc. 66-1 at 84.) Although this fact tends to support the City's position, it is not dispositive—JG Staffing Arizona, LLC's account statement (Doc. 66-1 at 84) suggests that JG Staffing Arizona, LLC was receiving payments from other entities on behalf of JG Staffing, Inc. Thus, the mere fact that JG Staffing Arizona, LLC was receiving payments from the City does not conclusively establish that JG Staffing Arizona, LLC had to be the City's counterparty under the contract.

It is also true that the the certificates of liability insurance showed JG Staffing Arizona, LLC was the insured party. (Doc. 68-3 at 78-79.) But the City cites only Ms. Griffin's declaration (Doc. 68-3 ¶¶ 17, 20) for its claim that "JG Arizona performed all of the services under the Glendale Contract, including furnishing and paying temporary workers." (Doc. 65 at 8; Doc. 67 at 8.) Yet Ms. Griffin concedes in her declaration that "[t]he time sheets used by the temporary worker[s] were generic time sheets" that were "used interchangeably by both JG [Staffing,] Inc. and JG [Staffing] Arizona[,] [LLC]." (Doc. 68-3 at 5-6 ¶ 21.) And as ARA notes in its reply, "[t]here is . . . nothing indicating that the City would have been able to distinguish whether JG [Staffing,] Inc. or JG [Staffing] Arizona[,] LLC performed any tasks." (Doc. 69 at 9.) Finally, the invoices requested payment to "JG Staffing of AZ" (Doc. 66-1 at 81), an entity that, again, does not exist.

Some of the City's proffered evidence also suffers from a temporal defect. The Court must "attempt to 'ascertain and give effect to the intention of the *parties at the time the contract was made* if at all possible.'" *Taylor*, 854 P.2d at 1139 (quoting *Polk*, 533 P.2d at 662) (emphasis added); *see also Greyhound Lines*, 260 F. Supp. 3d at 1190 (emphasis added) (quoting *Associated Students of the Univ. of Ariz.*, 584 P.2d at 569))

("The acts of parties under a contract, *before disputes arise*, are the best evidence of the meaning of doubtful contract terms."). Although Ms. Griffin—an individual with an interest in both entities—now claims that "the response to the RFP that was submitted by JG [Staffing] Arizona[,] [LLC] mistakenly used the name of JG [Staffing,] Inc" (Doc. 68-3 at 2-3 ¶¶ 2, 7), she was unable to identify any contemporaneous information in the response that pertained solely to JG Staffing Arizona, LLC—the sole example she provided "pertain[ed] to *both* JG [Staffing,] Inc. and JG [Staffing] Arizona[,] [LLC]" (*id.* ¶ 9, emphasis added). Moreover, there is no evidence in the record that the City, the other party to the contract, intended to contract with JG Staffing Arizona, LLC, rather than JG Staffing, Inc. Indeed, the City sought authorization for the City Manager "to enter into an agreement with J.G. Staffing, Inc.," not JG Staffing Arizona, LLC, and the City's 30(b)(6) designee testified in her deposition that "[t]he City Council approved the City Manager to enter into a contract with JG Staffing, Inc." (Doc. 58-6 at 29:2-12, 43:5-6, 117.) Thus, contrary to the City's claim, the evidence is not clear that *both* parties *at the time the contract was made* intended for the contract to be with JG Staffing Arizona, LLC.

The Court need not go through all the evidence cited by the parties to conclude there is a genuine dispute as to the intended counterparty. The Court, thus, denies ARA's motion for summary judgment on the breach of contract claim. For this, and the reasons that follow, the Court also denies the City's motion for summary judgment on this claim.

II. <u>Notice and Proof of Assignment</u>

The City argues that, regardless of which company qualifies as the counterparty under the staffing contract, it is entitled to summary judgment on Count III because ARA didn't provide sufficient notice or proof of the assignment to the City. (Doc. 65 at 9-10; Doc. 67 at 13-14.) In response, ARA asserts that: (1) its notice was sufficient even though it did not use any variation of the term "assign," (2) the City did not ask for proof of the assignment and therefore ARA was not required to furnish any proof, and (3) even if the City had asked for proof, ARA provided sufficient proof. (Doc. 69 at 10-11; Doc. 72 at 9-

11.) The Court agrees with ARA.

Once "the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee," the account debtor must pay the assignee rather than the assignor. A.R.S. § 47-9406(A).[3] In other words, "when an account debtor receives notice of a valid assignment and directions to pay to the assignee, the account debtor becomes liable to pay the assignee." *Indep. Nat'l Bank v. Westmoor Elec., Inc.*, 795 P.2d 210, 214 (Ariz. Ct. App. 1990). "Generally, an account debtor who disregards directions to pay the assignee and instead pays the assignor remains liable to the assignee." *Id.*

The account debtor may, however, request that the assignee "seasonably furnish reasonable proof that the assignment has been made." A.R.S. § 47-9406(C).[4] If the assignee does not comply, "the account debtor may discharge its obligation by paying the assignor, even if the account debtor has received a notification under [A.R.S. § 47-9406(A)]." *Id.*

The City first argues that ARA's July 2016 letter to the City did not provide sufficient notice of the assignment. That letter provided that: (1) "ARA has a pre-existing relationship with JG Staffing Inc. as a source of capital funding"; (2) "[r]elated to this relationship, JG Staffing Inc. has pledged a security interest in its business assets (including, without limitation, rights to payment on JG Staffing Inc. invoicing) to ARA"; and (3) the City should "make all payments for JG Staffing Inc. to [AGR Funding Inc.]." (Doc. 58-6 at 204.) The subject line of this letter was "Agreement for Temporary Workers for Recycling Facility, Landfill & Public Works Between JO Staffing Inc. and the City of Glendale," *i.e.*, the staffing contract, and the first line of the letter notes that the letter is in reference to the staffing contract. (*Id.*)

To be sure, the letter did not contain any variation of the word "assign." But as courts interpreting the earlier version of U.C.C. § 9-406(a) have held, "magic words" are

---
[3] A.R.S. § 47-9406(A) mirrors U.C.C. § 9-406(a).
[4] A.R.S. § 47-9406(C) mirrors U.C.C. § 9-406(c).

not required for a notice of assignment to be effective. *Mun. Tr. & Sav. Bank v. Grant Park Cmty. Dist. No. 6*, 525 N.E.2d 255, 258 (Ill. App. Ct. 1988); *Hall Bros. Const. Co. v. Mercantile Nat'l Bank of Ind.*, 642 N.E.2d 285, 290 (Ind. Ct. App. 1994). "Notice of the assignment need not be in any particular form . . . ." *King v. Tuxedo Enters., Inc.*, 975 F. Supp. 448, 453 (E.D.N.Y. 1997). "[T]he only requirement is that the notice reasonably identify the rights of the assignee and reasonably demands payment to the assignee." *Mun. Tr. & Sav. Bank*, 525 N.E.2d at 258. "Whether a notice is sufficient depends upon the facts of each case." *Hall Bros.*, 642 N.E.2d at 290.

Moreover, there is "no meaningful difference between a security interest and an assignment." *In re Apex Oil Co.*, 975 F.2d 1365, 1369 (8th Cir. 1992), *reh'g denied and opinion modified* (Nov. 19, 1992). The Eighth Circuit in *In re Apex Oil Co.* concluded that notification of a security interest in the amount due is the same as notification that the amount due has been assigned. *Id.*

Here, the July 2016 letter made clear that the City should make all payments under the staffing contract to ARA. That ARA was claiming a security interest in the payments, rather than an assignment, does not render the notice insufficient. This case is unlike *Warrington v. Dawson*, 798 F.2d 1533 (5th Cir. 1986), on which the City relies. There, the defendant, a farmer, was briefly shown a letter mentioning a lien while he was working in his rice field and not wearing his reading glasses. *Id.* at 1534. The court found this was not a proper means of notification and further concluded the letter did not "reasonably identif[y] the rights assigned" because an "ordinary consumer" cannot be "presumed to know what a 'lien' is." *Id.* at 1539. Here, a jury could find that the City is a sophisticated party, not an ordinary consumer, and thus can be charged with understanding that ARA was claiming a security interest in the payments under the staffing contract and requesting that these payments be made to it (through AGR Funding Inc.), effectively constituting an assignment. Further, as the U.C.C. comments provide: "If an account debtor has doubt as to the adequacy of a notification, it may not be safe in disregarding the notification unless it notifies the assignee with reasonable promptness as to the respects in which the account

debtor considers the notification defective." U.C.C. § 9-406, cmt. 3. The City failed to notify ARA of any respects in which it considered the notification defective.

The City next argues that ARA "failed to furnish reasonable proof of the assignment." (Doc. 65 at 10; Doc. 67 at 14.) As an initial matter, it is not clear that the City requested such proof. As the City concedes, it asked ARA only to "complete a form identifying which party would assume the tax liability for any payments from the City." (Doc. 65 at 10; Doc. 67 at 14.) The City fashions an after-the-fact explanation for requesting the tax liability form, contending that this request constituted a "request[] [for] proof of the alleged assignment." (Doc. 77 at 9-10.) Yet the Court need not uncritically accept such a self-serving interpretation of a piece of evidence at the summary judgment stage. Reasonable jurors could disagree as to whether the City was requesting that ARA complete this form (a) as proof of the assignment or (b) merely for tax purposes.

Even assuming, moreover, that the City sufficiently requested proof, a reasonable juror could find that ARA did enough to comply with the request. ARA returned the tax liability form to the City with JG Staffing, Inc.'s TIN, albeit without the signature of anyone at JG Staffing, Inc. If the City doubted the validity of the assignment, it should have sought further proof. *King*, 975 F. Supp. at 454 ("If Mayrich doubted the validity of the assignment, it should have protested or asked for further proof. It did not do so and now can be held liable for the outstanding amount due on Tuxedo's debt to plaintiffs."); U.C.C. § 9-406, cmt. 4 ("An account debtor that questions the adequacy of proof submitted by an assignee would be well advised to promptly inform the assignee of the defects.").

Given the evidence presented, a jury could find that ARA provided sufficient notice and proof of the assignment.[5]

…

…

---

[5] Because the Court finds there is a genuine dispute over whether ARA's July 2016 letter provided sufficient notice of the assignment, the Court need not consider the City's argument that ARA's Financing Statement did not obligate the City to make payments to ARA. (*See* Doc. 67 at 12.)

III.     Account Stated

In Count IV of the complaint, ARA asserts a claim for "account stated." In its motion papers, ARA argues the City is liable for an account stated because "JG Staffing[,] [Inc.] entered into the Glendale Contract with the City that created a consistent creditor-debtor relationship," "JG Staffing[,] [Inc.] agreed to provide temporary workers for the City in exchange for the City issuing regular payments," and "[t]he City issued those regular payments, albeit to the wrong party," "prov[ing] both the City's assent to the balance of the JG Staffing[,] [Inc.] account as well as the City's promise to pay pursuant to that account." (Doc. 56 at 11.) The City contends, on the other hand, that ARA has no claim for account stated because (1) there was never an account or agreement between JG Staffing, Inc. and the City; (2) even if there had been such an agreement, ARA "failed to produce any evidence that the City and JG [Staffing,] Inc. mutually agreed to settle and strike a balance as to any 'account' between them; (3) ARA does not "offer any proof of an agreement between the City and JG [Staffing,] Inc. as to what the settled amount would be"; and (4) "the City and [ARA] never mutually agreed to settle and strike a balance as to the City's account with JG Arizona." (Doc. 67 at 10.)

As noted above, there is a dispute of material fact as to the identity of the City's counterparty under the staffing contract. But even assuming JG Staffing, Inc. were the correct party to the contract, ARA has failed to present any evidence of an agreement to settle between the parties.

"Under Arizona law, an account stated occurs when persons with an open and running business account mutually agree to settle and strike a balance." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1404 (9th Cir. 1996); *see also Ralston v. Morgan*, 73 P.2d 94, 96 (Ariz. 1937) ("The law seems to be well settled that, when persons who have had business dealings with each other and between them there has been an open running account which they have mutually agreed to settle and have struck balances, such settlement becomes an account stated . . . ."). "The account stated is a new promise and takes the place of the items of the open account." *Ralston*, 73 P.2d at 96. "An agreement

to settle may be express; however, in some circumstances such an agreement may be implied from the rendering of a statement and a failure to object to that statement within a reasonable time." *Newbery*, 95 F.3d at 1404.

ARA presents no evidence of an "agreement to settle," whether express or implied, between the City and JG Staffing, Inc. or between the City and ARA. To the contrary, there seems to have been significant confusion on the City's part. Because ARA fails to "establish the existence of an element essential to [its] case," the Court denies ARA's motion for summary judgment on its claim for account stated and grants the City's motion on this claim.[6] *Celotex*, 477 U.S. at 322.

IV. Statute of Limitations

The City renews its statute of limitations argument from its motion to dismiss. The City asserts that because ARA first learned of the staffing contract on July 16, 2016, and "promptly notified" the City of its claim for payment through a letter dated July 19, 2016, "as of July 16, 2016, or July 19, 2016, at the very latest, [ARA] was aware that the City had not made any payments allegedly due under the Glendale Contract to [ARA]" and "[t]herefore, [ARA's] cause of action for such payments accrued at least as early as July 19, 2016." (Doc. 67 at 15.) Because ARA did not file its complaint until July 27, 2017, the City contends that any amounts paid by the City before July 26, 2016 are time-barred. (*Id.*)

At the summary judgment stage, the City "bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to" its statute of limitations affirmative defense. *Houghton v. South*, 965 F.2d 1532, 1537 (9th Cir. 1992). Notably, the City presents no more evidence than the Court had available to it at the motion to dismiss stage. Because the City fails to meet its burden, the Court denies the City's motion for summary judgment on this ground.

Litigants must file suit against an Arizona public entity within one year after the

---
[6] ARA conceded at oral argument that its available remedies will not be affected if the Court rejects this claim.

cause of action accrues. A.R.S. § 12-821. The cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause of the damage. A.R.S. § 12-821.01(B). For a cause of action to accrue, "[t]he plaintiff 'must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury,' but 'need not know all the facts underlying [the] cause of action." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)).

In its March 21, 2018 order denying the City's motion to dismiss, the Court noted that "[a] request for payment is different than a realization that the payment will not be made." (Doc. 34 at 5.) This proposition still stands. The City has failed to present any evidence as to when ARA realized it had been *damaged*. Accordingly, the Court finds the City has not met its initial burden and, thus, denies the City's motion on this ground.

V. Scope of Factoring Agreement

The City also renews its argument, from its motion to dismiss, that ARA did not have a security interest in accounts arising after the Factoring Agreement was executed (*i.e.,* after 2011) because the Factoring Agreement lacked an after-acquired clause and ARA and JG Staffing, Inc. didn't enter into additional security agreements covering subsequently-acquired property. (Doc. 67 at 15-16.)

The City presents no new law in support of its argument but does cite some additional facts. These facts, however, have no bearing on the legal issue on which the Court already ruled. The City contends that "[ARA] understood the necessity of including express language in order for a security interest to attach to after-acquired accounts" because "[b]oth the Factoring Agreement that [ARA] entered into with JG [Staffing] Arizona[,] [LLC] and the Loan and Security Agreement that [ARA] prepared for execution by JG [Staffing,] Inc. expressly conveyed a security interest in present and future accounts receivable." (Doc. 67 at 16 (emphasis omitted).) But ARA's choice to include such language in later contracts does not mean the language was required for ARA's security interest to attach to after-acquired accounts. *Cf. Quintel Comm's, Inc. v. Fed. Transtel,*

*Inc.*, 142 F. Supp. 2d 476, 483 (S.D.N.Y. 2001) (a party's attempt to add clarifying language to a contract does not mean a contract lacking such clarifying language is necessarily different in scope: "[The] proposed language offered no more than belt and suspenders protection."). The Court stands by its earlier ruling (Doc. 34 at 3-4) and, thus, denies the City's motion for summary judgment on this theory.

VI. <u>Whether A.R.S. §§ 47-9406 and 47-9607 Create Independent Causes of Action</u>

The City seeks summary judgment on Counts I and II on the ground that A.R.S. §§ 47-9406 and 47-9607 don't create independent causes of action. (Doc. 67 at 10-12.)

The Court will deny this claim. Although the Fourth Circuit has, in an unpublished opinion, concluded that the corresponding provisions of the U.C.C. don't create independent causes of action, *see Forest Capital, LLC v. BlackRock, Inc.*, 658 Fed. App'x 675 (4th Cir. 2016), several courts have come out the other way. *See, e.g., United Capital Funding Corp. v. Ericsson, Inc.*, 2018 WL 3619633, *6 (W.D. Wash. 2018) ("[T]he court declines to adopt *Forest Capital*'s reasoning and concludes instead that . . . Washington's enactment of UCC § 9-406 . . . provides a private cause of action."); *Durham Commercial Capital Corp. v. Ocwen Loan Servicing, LLC*, 2017 WL 5643300, *1 (S.D. Fla. 2017) (footnote omitted) ("This Court . . . must look to New York law to determine whether this provision of New York's UCC would allow for a private right of action. The Court finds that it would.").

Here, it appears the debate over whether A.R.S. §§ 47-9406 and 47-9607 provide independent causes of action is academic—ARA has separately asserted a breach-of-contract claim, which has survived summary judgment, and the parties both agreed, at oral argument, that the remedies available under the breach-of-contract claim and the statutory claims are identical. Given this backdrop, and mindful of considerations of federalism, the Court sees no reason at this stage to decide whether A.R.S. §§ 47-9406 and 47-9607 provide independent causes of action. *Cf. Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999) ("[A] federal court sitting in diversity must proceed with caution in making pronouncements about state law."); *1st Source Bank v. Vill. of*

*Stevensville*, 947 F. Supp. 2d 934, 942 n.1 (N.D. Ind. 2013) ("[T]he parties have presented arguments concerning the legal authority of a Michigan municipal corporation to take out a loan. This issue implicates questions of constitutional and statutory interpretation for which there is no Michigan precedent on point. Mindful of principles of comity and federalism, the Court will resolve this case without deciding a novel issue of Michigan law.").

VII. Attorneys' Fees

Both parties have requested attorneys' fees in connection with their motions. (Doc. 56 at 11-12; Doc. 67 at 17.) "In a diversity action the question of attorney's fees is governed by state law." *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979). Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01. Importantly, "[a]n award of attorney's fees under Arizona law is permissive, rather than mandatory." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 956 (9th Cir. 2006). In addition, "[t]he determination of the successful party under A.R.S. § 12–341.01(A) is within the 'discretion of the trial court,'" *Lee v. ING Inv. Mgmt., LLC*, 377 P.3d 355, 358 (Ariz. Ct. App. 2016) (citation omitted), which "should consider 'the totality of the circumstances and the relative success of the litigants,'" *Med. Protective Co. v. Pang*, 740 F.3d 1279, 1283 (9th Cir. 2013) (quoting *McAlister v. Citibank*, 829 P.2d 1253, 1262 (Ariz. Ct. App. 1992)).

The Court has denied ARA's motion on all grounds and denied the City's motion on all grounds except one. Thus, the Court is inclined to find that neither party was successful. But even assuming the City was the successful party, the Court declines to award the City any fees after considering the factors provided in *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985). The City prevailed on only one out of four claims and that partial victory didn't reduce the potential liability it still faces. The Court, thus, denies both parties' requests for attorneys' fees.

Accordingly,

**IT IS ORDERED** that**:**

1. ARA's motion for summary judgment (Doc. 54) is **DENIED**;
2. The City's motion for summary judgment (Doc. 67) is **DENIED** as to Count I, Count II, and Count III;
3. The City's motion for summary judgment (Doc. 67) is **GRANTED** as to Count IV; and
4. Both parties' requests for attorneys' fees are **DENIED**.

Dated this 25th day of January, 2019.

Dominic W. Lanza
United States District Judge